311-0131 Kenneth Poris, Appellant Kenneth Poris v. Lake Holiday Property Owners Association, Inc. et al. Appellee Bruce Lyon. And Mr. Poris? Good afternoon. May it please the Court. Thank you. My name is Ken Poris, and I'm not only the plaintiff in this case, but I'm a licensed attorney at law and also an appellant. This case raises the question of whether a homeowners association has the authority to authorize its employees to stop motorists within the property confines of the association for alleged violation of rules. This particular case arose in October of 2008. I was driving a motor vehicle off of a county road onto a private road that led into Lake Holiday. The private road was owned by Lake Holiday Property Owners Association. As I actually entered Lake Holiday property, suddenly a vehicle appeared behind me with flashing lights of a white and amber nature. This was admitted by the defendants, and they used those lights. I pulled over, thinking I was yielding to an emergency vehicle. As I was able to pull the vehicle behind me, I looked up, and because of what I do for a living, I immediately recognized it was not a squad. So I didn't know who the other person was, so I got out of my vehicle, which was a truck, and walked to the rear of it. At that point, an individual in a uniform exited from the vehicle behind me and informed me that I was to get back in my vehicle. I asked who he was, and he indicated he was from Lake Holiday Security. I said, what are you doing, and he basically said, get back in your vehicle. His words, as I recall, were for your safety and mine. There was exchange of words between Mr. Podner, who was the security person involved, and myself, and he repeatedly kept ordering me back into my vehicle. As an attorney, I'm well aware of the fact that if I escalate the situation, that can have some negative consequences, so even though I felt he was wrong, I obeyed. When I got back to my vehicle, Mr. Podner came up and wanted me to then show evidence of membership in Lake Holiday, which I did. He then also wanted to see my driver's license, asked me to remove it from my wallet, and to hand it to him. He then took my driver's license and returned back to the other vehicle. At all times, I was remaining in my vehicle. At this particular point, if I were to try and leave, obviously I'm going to be doing so without my property, namely the license. Up to this point, there was videotape, but no audio involved, and this was coming from the Lake Holiday vehicle. After a period of time, and it's been a while since I've looked at the video, I'm guessing it was seven or eight minutes, Mr. Podner returned to my vehicle. At that point, he had previously texted in his vehicle, he'd activated the audio portion. Now, there's three different versions as to what was said on the initial part of the audio version. The defendant's version said I was being recorded. My version said I was being video recorded. The trial court said, and I'm trying to quote this exactly, it seems that audio and video was stated. But either way, I was now being recorded. And if you read the transcript of the defendant, I'll take their transcript, which is fine. You read it, obviously, throughout this entire conversation. I was telling this individual he had no authority, asking him why he was detaining me. He kept saying he wasn't detaining me, and we were going back and forth. There were some questions about radar, and I had to obey his instructions, and I just had had enough. Eventually, Mr. Podner gave me, well actually at the beginning of this transcript, he gave me my license and told me he was giving me a citation. What is involved here is that Lake Holiday, as a homeowner's association, has a right to create rules. It's the mechanism to enforce these rules that is illegal, and that's why we're here today. They're using self-help. The mechanism they've created is not contained in their rules. All rule I think is 8.01 says is that they are entitled to Lake Holiday security, whatever that is, is entitled to enforce these rules and regulations. The mechanism of making motor vehicle stops, though, is only contained in the so-called security manual, which was created by the so-called chief of security, Mr. Matthew Clifford. As Mr. Clifford testified in another hearing approved by the Board of Directors of Lake Holiday. It's not in the rules. It's not in any of the corporate documents. Lake Holiday has taken their security individuals and equipped them with uniforms, allows them to use utility belts that contain mace, handcuffs, flashlights. I'm not sure if there are batons or not in this case. They've given them badges and allowed them to drive vehicles that they call squats. None of these employees, security employees, are licensed and they're all employees of Lake Holiday Property Owners Association. Squats are equipped with lights known as wigwags, which are the flashing lights of the headlights, and oscillating lights in the windshield. The lights used in the video clearly show white and amber, but if you look at a little bit of tinting it appeared that it could be blue too, but I do believe it was just white and amber. They also equipped them with video, audio recording equipment, along with a radar unit. Now this particular radar unit is a stalker, and I forget exactly the model, but it's a stalker and it requires an FCC license, which they did not possess at the time. The FCC had, when they applied for the license for the stalker, the FCC had said this is the type of unit that is frequently used by police authorities. You have permission from your local police authority, and they indicated in response that they in fact had, that the Sheriff of LaSalle County knew that they were using this. But that, if you look at Mr. Clifford's testimony, which is a part of the record here in the briefs, you'll find out that he admitted that Sheriff Tumpleton had never given them explicit authority to use it. They claimed they did not. And that was how they got their FCC license. Basically my position is that it's not that they've created a police department, but they've created the illusion that what they have created has authority and legitimacy in their actions. So then the real question in this case is does Lake County Homeowners Association have the authority to authorize its employees to stop and detain motorists and issue them citations? The criminal code defines arrest. The criminal code of procedure, excuse me. And it states an arrest is made by an actual restraint of the person or by a submission to custody. People v. Cash, which we did cite, states that when a person begins to submit to the assertion of authority by stopping or beginning to stop, a seizure of that person has occurred. This happened in my case. This further buttressed by the fact that in his affidavit, which is in the last page of the supplementary appendix, Mr. Potter stated, On October 20, 2008 at approximately 9.21 p.m., I clocked the plaintiff's vehicle driving 34 miles an hour in a 25 mile per hour zone using radar. I then activated the amber lights on my security vehicle to indicate the plaintiff should pull to the side of the road and submit to further instructions per the rules and regulations of Lake County. So I was definitely pulled down. Industrial salvage, which was a case involving a weight over weight situation, stated that if a driver can face additional penalties for not submitting to a show of authority, there is no consent in that case. That's exactly what happened in my case. Because according to Rule 2.1 of the Lake County rules, if I don't obey the Lake County public safety officers, then at that point I can be fined additional sums of money for a rule violation. Industrial salvage also stated that limited stops are for police officers only, and that that power is not in the hands of a private citizen. That's exactly what Lake County is doing. Perhaps the one that explains everything the best is People x Well Ryan, which is also a case that we cited in our briefs. It says an arrest requires something less than being taken into custody. An arrest occurs when a person's freedom of movement has been restrained by means of physical force or show of authority. Again, Mr. Podner showed authority, and I was sent back to my vehicle in order to remain there. This happened to me. In determining whether a person has been arrested, the relevant inquiry is whether a reasonable innocent person in this situation would conclude that he is not free to leave. I obviously was not free to leave. The issuance of a citation is one manner of evidencing an arrest. I received a citation. So what exactly can Lake County do? Well, they're like any other private citizen. They can do what is called a citizen's arrest. A citizen's arrest, which is also contained in the Criminal Code of Procedure, states that it has to be for reasonable grounds, and it has to be for an offense greater than an ordinance violation. Now, the proper procedure in such a case, and we see this happen all the time in Walmart or Kmart or some of the other department stores, is that the security person will stop the person. They will take them, briefly detain them, when they call the proper authorities to come and finish handling the matter. In this case, nobody was called. And, obviously, the question is I was being stopped for a rule violation. Well, you were stopped on a private road. That is true. But I don't believe that there's any exceptions for private property that allows people to give arrest powers to someone else. Well, is there a violation of Motor Vehicle Code for private roads? In this particular case, if you take a look at the enabling ordinance, it says that Lake Colliery Roads are public highways for the purposes of the vehicle code. Okay. So I would say that in this case, then, they're trying to say that it can be either-or, either private or public. Well, the reason I was asking the citizens' arrest is usually for a violation of something like, for example, a violation of a state law. Oh, great. Absolutely. So there is an enabling that it is a public way. There is an enabling statute that was passed, I believe, in 07, approximately a year and a half before I was stopped. And that's also in the documentation before the court. Does LaSalle County patrol that? Do they have a contract with them to patrol that? I don't know if they have a contract or not. I do know that, of course, it's not in the record, but I live in Lake Colliery. I have seen LaSalle County squads in the area, yes. Anyway. And what is- oh, that's- I'm sorry. Go ahead. All right. One of the things, though, that is said is that a citizen's arrest cannot be based on a radar. And that was People v. Lahr, which is a 1992 Illinois Supreme Court case. It stated that radar is a police power and cannot be the reason for a citizen's arrest because radar is generally not available in front of citizens. The court in that case did recognize that, well, at certain times, citizens can't have radar. But they're saying that as a rule, it's generally a police tool. I would, again, remind the court of what I said about the stalker radar unit that Lake Colliery currently has, which requires an FCC license. And there's reasons why the FCC wondered whether or not they had permission to use it. It's definitely a police tool. Lake Colliery has also attempted to justify their use of amber lights now, which is a change from when I was stopped, by saying that they are a security company. They're not a security company. They were organized under the Not-for-Profit Corporation Act as a homeowner's association. A security company is not one of the permitted uses under the Not-for-Profit Corporation Act, even back then. What defines an Illinois statute? What defines a private security company, or how is it defined? There's a couple of different things. One of them is in the Professions and Occupations Act, which covers security companies and all. Like Lake Colliery does. But I think the words they use are private security contractors, which would include individuals. I do know that the case of People v. Perry said that a security guard can only affect a citizen's rights. That I do know. And that's been the law in Illinois since 1975 and probably before that. The fact is that Lake Colliery security people are employees. They're not licensed. They never have been licensed. In theory, they could contract with a security company. A homeowner's association could contract with a security company. An outside security company, yes, they could. But even at that, the outside security company can only have the powers of a citizen's rights. So if it's a rule violation, I don't believe they can use police powers to pull you down. Is this a posted speed? It is posted, yes. Again, we're getting a little bit beyond what's in the record. Because, I mean, I'm still defending that particular part of the matter. Okay, go ahead. Okay. And I don't think it's fair to get off the topic. No, I agree. The defendant's claiming that they are a private security company. That claim was raised. That it's within their capacity to have this private security company. Are they calling themselves that? The first time this was raised, I believe, was in their motion for summary judgment in the trial court. And what they did at that time is that they were trying to justify the use of the amber lights. The white and amber lights have been changed. Now they're down to amber. And they're saying there's an exception under the vehicle code, which considers lighting on vehicles. And that amber lights are allowed for a private security company, which is an exception. But now they're saying they're a private security company. That's where that arose. And, of course, I'm saying they're not a private security company. They're a homeowner's association. They're using employees and calling them security. They're not a separate entity. And I don't think they can be a separate entity under the not-for-profit corporation. The question, then, is that rules are not laws. And this is a case I did not cite. But it was People v. Williams. And, basically, what that was— No, we have a rule here. Well, yes, but if it's not cited in your brief, then unless the other side agrees, we will give you some time, maybe a week, to bring that case before us with a motion for additional authority and any comment you'd like to make, and then give the other side a week as well. Is that familiar with this case? Or do you have an objection to— Yeah, I would like to have a chance to— Sure. And then, Mr. Porras, you have a week. Is that enough time to present that to us in a motion along with any comment? Anyway, skipping down that, I mean, we've always maintained, anyway, that rules are not laws. A rule—a law is passed by—the very bottom of it would be an ordinance, which is a municipality. That's a governmental agency. A homeowner's association has no legislative authority except to pass rules. Rules are a tier or two below an ordinance, which is obviously at the lowest along with laws. Lake Colony has exceeded, through their security issues, they've exceeded the authority given to them as a homeowner's association. They are not allowed to delegate to individuals authority to make arrests when they don't have that original authority to begin with. Again, we mentioned the LaSalle County Ordinance, so I'm not going to go into that again. The— Counsel, that's two minutes. Okay. Rule 301 of Lake Colony states that the Illinois Vehicle Code must be observed in Lake Colony. Their manual, their security manual, says that Lake Colony security will enforce traffic laws and issue citations. Manual says all stops have to be visually and audio recorded. Consent's not required. In my case, there was no consent. There is no legal authority for them to demand that I surrender my driver's license to them, yet that's what they did. What Rule 201 says is that they have a right to examine. Examine means show, not surrender. Again, they've exceeded their authority. They've also tried to claim that they don't stop non-residents. In our reply brief, we gave three instances, which were previously in the record, showing that they had stopped three individuals for speeding, checked by radar, and were not residents. And again, private property is not an exception to the stopping of vehicles. And at that point, I will stop at this time, and thank you for your attention. I have a question. Yes, sir. A hypothetical. Would you be here if the association in enforcing their rules created, like what's up in Chicago, these cameras? I think that's non-intrusive. Okay. So they set up a system of that to enforce the rules where a camera, photograph, identification of the motor vehicle and presumably the operator, and is sent to the person and says you violated this rule and you are fined thereby? I would have no problem with that because we're really here. Okay, so we're really here on the method of enforcing the rule. Correct. But I'm clear on that. Right. And I mean, truthfully, another possibility would be if they want to clock somebody on radar, follow them. See where they turn in. The homeowner is responsible for any violations that occur. Their guests are members of their family. Then issue them a citation. They don't have to stop. Any other questions? Where is the, let's take your hypothetical, and your guest gets out, can the officer say, just a minute, I want to give you something? I don't believe they can stop him now. Okay. So they'd have to do some other mechanism other than the camera. Correct. Okay. Thank you, Mr. Forrest. Thank you. And Mr. Lyon. May it please the court, counsel, Bruce Lyon on behalf of the appellee defendants. What we have here is actually, I think the counsel has now gotten to the point where we are. We do have a simpler issue here. We have a private contract dispute here. Mr. Porras is a member of the Lake Holiday Homeowners Association. He has consented to the rules of Lake Holiday. The plan of survey and declaration of restrictions granted Lake Holiday the responsibility for the construction and maintenance of private roads and streets. The articles of incorporation state that Lake Holiday was formed to construct private roads and maintain their own buildings and structures of all types, roadways, and to all other things reasonably necessary therefore. The bylaws then provided for the board to be empowered to adopt rules and regulations necessary for the association and the members, including, this is very important, employing people to enforce the rules and regulations. The rules and regulations as set up had a 25 mile per hour speed limit and provided for violations for not following those and those were set forth in those rules and regulations. Mr. Porras voluntarily consented to these rules, the same as if you joined a club, the same as if you joined a private organization. He said, I want to live here. I am willing to abide by the rules and regulations of Lake Holiday. The rules very clearly state that there is an enforcement mechanism. Under counsel's argument, enforcement would be impossible of any of the rules and regulations. If you went and put graffiti all over a clubhouse of Lake Holiday, you can't enforce it because then you'd be exercising police powers. I think it's important, as counsel talked about, he said that, he started talking about citizen's arrest. As you indicated, there is a difference between an arrest for a violation of an Illinois law and being issued a citation for violating the rules of Lake Holiday. What Mr. Porras was issued was a citation for violating the rules of Lake Holiday. Lake Holiday is within their rights to enforce their rules and regulations. Mr. Porras spoke of the enabling statute, which made this a partially public roadway. Very clear in that enabling statute that Lake Holiday is still permitted to have rules and regulations of their own as long as those rules and regulations do not contradict the Illinois Motor Vehicle Code. What you have here is the residents of Lake Holiday wanted safe roads. There are kids living out there and they didn't want people driving 50 miles per hour on their roads. The board authorized a speed limit and authorized protection of people and their children to enforce that speed limit so that people felt safe out on the roads in Lake Holiday. That is what we have here. This is not citizen's arrest because the Lake Holiday security force is not trying to arrest Mr. Porras. They're not charging him with a violation of the Illinois Motor Vehicle Act. They are simply saying, Mr. Porras, you reside in Lake Holiday. You agreed to follow our rules and you chose not to do this. Judge Doherty, when he heard the temporary restraining order, talked about an analogy which I think was perfect. If you join the Elks Club and you're at the Elks Club and you start berating a waitress or speaking suggestively to them, the Elks Club has the right to enforce their rules and say, wait a second, you can't do that. That is exactly what transpired here. Well, it's the methodology of enforcement I think that's before this court. I can think of all just creatively, just sitting here, ways in which you can enforce the rule without detainment. I gave an example to opposing counsel earlier. The issue of detainment, again, the video I think is very instructive on that. Because Mr. Porras was told repeatedly that you are not being detained. And there's about, well, you can call a flower a rose and it doesn't make it a rose. Well, I believe that if you look at the case where Hanna versus Marshall Field, very instructive. You had an employee who for five hours was placed in a room. And they said that that was not false imprisonment. They said, well, the key was on the table. Here, you had a vehicle running. You were told repeatedly you weren't being detained. You were on the side of the road for your own safety. And he was told, no, I'm not detaining you. The fact that his driver's license was taken because it was in the dark of night so that the police officer could see it. As Mr. Porras admitted, they are permitted to examine the driver's license. Well, it's very difficult to examine it in the dead of night. And if Mr. Porras didn't want to stay, he simply could have driven away. He lives in Lake Holiday. He could have driven over to the clubhouse the next day and picked up his driver's license. So that is not a condition of detainment. Detainment would be being placed somewhere or forced to be somewhere and not being permitted to leave. Is that a jury question? Isn't that a jury question? What facts contribute to whether there is a detainment? Well, I think that the issue of detainment, as Judge Doherty indicated in his opinion, there was some question in terms of whether or not there was probable cause for the stop or the stop was reasonable. But counsel has waived those issues because counsel chose to have summary judgment. But those are legal issues. The things you were talking about earlier, whether he was detained, could have gotten up and walked away, he could have gotten back in his car, driven without his license to his home or whatever. I mean, those are all fact issues. They can be fact issues. Not reasonable cause, probable cause. There is a legal issue. Well, if they had the stop was reasonable or with probable cause, then there is not an issue of detainment. But, again, I believe that there is a waiver here. That's true. Well, I would say to Reynolds versus Menard, but that's fine. I believe there is clearly a waiver here as to the cause of imprisonment, this whole issue. Because counsel chose to have summary judgment issued as to that count. Judge Doherty indicated that he thought there might be a question. And after discussion, counsel decided to have the whole thing wrapped up and brought up here, thereby consenting to the summary judgment as to the detainment. And since he failed to argue it at the trial level, he's then waived from raising that issue here. And I agree. I think the issue is whether or not, to me it's very succinctly, can a private association enforce their rules? When everyone in the association knew that there was a late holiday security, knew that they were giving tickets for driving faster than the late holiday rules allowed, and consented to that. Let me ask a question. Is there an issue, ultimately, as to whether the security force for late holiday was a private security company? I don't believe so. I think our brief deals with that. If you look at the issue, late holiday, the statute is, the committee was out today and lights under 625 ILCS 5-12-215B, vehicles used by a security company. Although not defined in that statute under the Private Protective Act 225 ILCS 447-5-10, there is a definition of a security company. If you look at that definition, clearly it applies to watchmen, which as Judge Doherty indicated, clearly this would fall under, and gives a specific exclusion for licensing requirements for someone who works for only one employee, such as the late holiday security force. So if you read the original statute, which is like amber lights, you can use it, and then you go to the Private Protective Act and look at their definition of a security company, late holiday clearly fits within that. So you're saying the private security contractor definition, I'm looking at your brief, that covers an employee of late holiday? Correct, yes. But it says a person who engages in the business of late holiday security. If you look at the bylaws of late holiday, they discuss late holiday security. It is an arm of the late holiday homeowners association. Similar to a corporation that has various subsidiaries. They have a late holiday security. These people, they are employees whose job is the security of the residents of late holiday. But it's not a subsidiary in fact. It is the late holiday. The question is, is late holiday itself a security company? With these people operating under that definition. Correct. I agree with you in the extent that they are employees of the late holiday homeowners association. But they are basically doing only the business of enforcing the late holiday rules and regulations. And the reason why it's set out in the rules and regulations to say that there is this late holiday security is so everyone there knows. If someone doesn't like the rules, they don't have to live there or they can try to change the rules. If you work for someone, the government can't require you to take a drug test without any cost. But if you work somewhere, they can require you to take a blood test to see if you have any drugs in your system. Here, Mr. Porras chose to live here. He chose to live by the rules and regulations of late holiday. He didn't have to. He can leave or he can run for the board and try to change those rules. It so happens that the majority of the residents like the rules because they like their roads safe. They want their kids to be able to be out on the road and not worry that someone is going to be driving 50 miles an hour. I still have a problem conceptually here. Because if you look at enforcement and having the rules and making the roads safe, what is it that's making the roads safe? It's enforcing the rule, correct? Correct. But the rule says you'll be fined if you violate this rule. Yes. Okay. So the only thing that's really making the roads safe is the penalty for violating the rule. That is correct. Now back to my question of enforcement. Is there a methodology of enforcing through the penalty that does not involve these issues of detainment? Well, I don't believe that the area of Lake Holiday could be policed without having the presence of this security force. If you put one camera at the entrance to Lake Holiday, the people who are being enforced in these rules are people who live there. Do you think everybody is going to know where that camera is? It's not reasonable to assume that they're going to put cameras all throughout the property. Isn't it just as reasonable if you have a security officer in the vehicle, as Justice Holdridge said, that you could simply follow that speeder, note their license, date, time, and send it in the mail. Sort of like in every private, you have a camper in your driveway. Without the stop and the question of whether or not it's a voluntary stop and the examination of the driver's license. The problem with that is that the police often, if you have a vehicle that hit and runs, let's say they smash a car that's parked on the street and take off, and someone follows the vehicle and gets the license plate of that vehicle and gives it to the police. What's the first thing that the driver of that hit and run vehicle will generally abandon the car, and then when they say, when they're called, you're the owner of this vehicle, you were involved in a hit and run, oh no, the vehicle was stolen. Council has two minutes. Don't your private rules, though, say that it's your vehicle, you live here, and any of your guests or anybody that's in your driveway? Yes, you are responsible for your guests in Lake Hollyday. I do agree with that. I think, though, that again, at night, it's difficult to get a driver's license, I mean license plate. If you look at the video here, it's very dark, and you're not going to be able to just pick up the license plate as they drive by. Even if you tried to follow them, if you drive down the street on a dark night and try to read the license plate ahead of you, you may be creating more traffic problems than otherwise. Your hit and run was now going away from Lake Holliday. Correct. That's a completely different situation. You can show a citizen's arrest all day long on that. You're right. But that's an individual citizen potentially putting themselves under danger. One last thing that I wanted to get out for, in reviewing the videotape again last night, and I know you have it as a part of the record, I listened, and it clearly does say audio and video recording. There's a car that drives by, but I listened to it about seven or eight times, and I agree with Judge Doherty that our transcript that we had that said recording was inaccurate. It does say audio and video recording. Thank you. I didn't mean to stop you. If there's more to say, go ahead. No, no, no. Thank you so much, Mr. Lyon. And, Mr. Morris, any rebuttal? I would like to address some of the matters that Mr. Lyon has referred to. He indicated that I consented to the rules. What we're talking about here is the method of enforcement, not the rules. The method of enforcement is not contained in the rules. What the method of enforcement is contained in is the private security manual, which is not generally available. He said that I agreed to, I consented to the rules. Actually, reading from what I placed, it says, It doesn't mean I've consented to the method of enforcement. I've never agreed to give up the right to be free and not to be arrested. That's what this matter's about. Mr. Lyon's made reference to graffiti. Criminal damage to property, that's a criminal offense. Obviously, there could be an arrest for that. You can obviously contract, as your Honor indicated, with a private police agency to patrol Lake College. In fact, I believe I was asked whether or not LaSalle County does patrol. The Elk Club reference, that's very simple. Somebody's unruly, you ask them to leave. If they refuse to leave, you call the police. That's how that problem is solved. The only way that you can keep my driver's license, because that is my permission to drive on the roads, whether private or public. The only way you can keep my driver's license is if I'm an attorney on my way to court. Then you can sit there and say, I give you my driver's license and I'll swing by the police station later and pick it up. That's the way that's handled. But you can't take my property and wait for me to get it back or have to go to retrieve it the following day. This is about can you arrest someone. It's not about a rule. It's not about anything else. It's about the method that they've adopted which says that we're going to arrest people. We're going to stop them. We're going to give them citations. It's interesting that many times in Mr. Lyons' presentation, he referred to policing, officers, police, exactly what I've been complaining about. They're using police authority. The probable cause is really a criminal concept. It's not a civil concept. It determines whether or not there's probable cause for a case to go further into criminal courts. That's what probable cause is. You don't get probable cause hearings in ordinance violations, for example, because they're generally not criminal offenses. And definitely in a rule situation, there's no probable cause involved. Mr. Lyons made reference to how the bylaws say that we've agreed to whatever they want to do. No, it says that the Board of Directors shall adopt such rules and regulations related to the use of association property that they deem necessary. There's nothing in there about arresting people. There's nothing in there about pulling people down using white and amber oscillating lights. There's nothing in there about amber lights. Mr. Lyons also indicated, and I believe it's on page 11 of his brief, he was indicating that, well, no, Lake Holly is not a private security company. But they specifically said in there they are a security company. That's been the problem with this case. But it's a very simple situation. It's a very simple fact. Do private citizens, and they receive authority from the Board of Directors of a homeowner's association to play police officer, make traffic stops, detain people to give them a citation. That's what this is about. It's not about a rule. It's not about anything else. It's about the method of enforcement that's been adopted. And it's been suggested in this courtroom before there are alternative methods which do not require a vehicle to be stopped, does not require a person to be detained in their vehicle, it does not require them to be legally arrested, and at the same time can accomplish the objectives. And if they feel that there's enough problems in there, they can always bring in the sheriff to give them further assistance. But they can, and I agree, you can use a radar gun to time a fastball. Counsel, I have one minute. I'm sorry? Counsel, I have one minute. Okay. Anyway, at this particular point what we're asking is that we're asking the justices to consider this case. We think that Lake Holliday has exceeded their authority and their method of enforcement. That's what this is about. I'm asking the Court, through the Department, to please reverse Judge Norty's decision. The direction to enter summary judgment on my behalf is to pray that the circuit court deny the summary judgment of the defendants and also include injunctive relief to prohibit Lake Holliday from arresting people and stopping these motorists. Thank you for your time and consideration. Thank you, Mr. Porras, and thank you both for your argument today. It's a very interesting issue of several issues, and we will take the matter under advisement and get back to you with a written decision within a short time. I will now take a short recess now. The Court now stands in recess.